# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Mark Morin, et al.,

                Plaintiffs,                    Court File No. 16-cv-4397 (RHK/LIB)

     v.

                                         **REPORT AND RECOMMENDATION**

Essentia Health, et al.,

                Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 37], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motion to Dismiss, [Docket No. 21]. This Court held a Motion Hearing on July 25, 2017, and Defendants' Motion to Dismiss was taken under advisement thereafter. (See, Minute Entry, [Docket No. 40]).

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 21], be **DENIED**.

## I.     BACKGROUND  AND STATEMENT OF ALLEGED FACTS[1]

Defendant Essentia Health ("Essentia") is a Minnesota nonprofit corporation that owns and operates various medical and medically related facilities throughout Minnesota, North Dakota, Wisconsin, and Idaho. (First Amended Complaint (hereinafter "FAC"), [Docket No. 17], 4). The present case involves two defined contribution retirement plans offered to employees of

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the operative First Amended Complaint, [Docket No. 17], as true and construes them in the light most favorable to Plaintiffs. See, Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998)), cert. denied 525 U.S. 1178 (1999).

Essentia: the Essentia Health Retirement Plan ("Retirement Plan"), a 401(k) plan, and the Essentia Health 403(b) Plan ("403(b) Plan"), collectively referred to herein as the Plans.

The Plans provide opportunities for participating employees to invest their earnings toward retirement on a pre-tax basis; the contributions are held in trust and invested through the Plans according to the participants' selections from a menu of options determined by the Plans. (Id. at 8). The Plans bear all administrative expenses not borne by Essentia, including compensation of outside administrative service providers for recordkeeping, trustee and custodial services, accounting, etc. (Id. at 8-9, 15). These administrative expenses may be paid directly by the Plans and/or through a practice known as "revenue sharing," which is "a common method of compensation whereby the mutual funds on a defined contribution plan pay a portion of investor fees to a third party." See, Tussey v. ABB, Inc., 746 F.3d 327, 331 (8th Cir. 2014).

The present case focuses on fees paid for recordkeeping services for the Plans. Recordkeeping is a service necessary for any defined contribution plan and the market for providers of recordkeeping services is highly competitive. (FAC, [Docket No. 17], 17). Such service providers often provide a service package, which may include "claims processing, trustee services, participant education, managed account services, participant loan processing, QDRO processing, preparation of disclosures, self-directed brokerage accounts, investment consulting, and general consulting services." (Id. at 18). The majority of plans are billed for recordkeeping on a per-participant basis, and plans with large numbers of participants can negotiate a lower per-participant recordkeeping fee. (Id.).

The Retirement Plan is a 401(k) plan which was established and became effective on December 22, 1965. (Id. at 7; see, also, Mem. in Supp. of Motion to Dismiss, [Docket No. 23], 2). Defendant St. Mary's Duluth Clinic Health System ("SMDC"), a nonprofit corporation and a

subsidiary of Essentia, was identified by the governing document of the Retirement Plan as its sponsor and fiduciary, responsible for overall administration of the Retirement Plan. (FAC, [Docket No. 17], 5). SMDC was also the sponsor, the administrator, a named fiduciary, and a functional fiduciary under the relevant statutory provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Id. at 4-5). Diane T. Davidson, who was SMDC's Senior Vice President of Human Resources, served as the Retirement Plan administrator, pursuant to the terms of the Retirement Plan's governing document. (Id. at 6).

BMO Harris was the recordkeeper for the Retirement Plan, which, at the end of its 2009 plan year, had 5,009 participants with account balances. (Id. at 19). The number of participants in the Retirement Plan stayed approximately the same through the end of 2011. (Id. at 20). In plan year 2009, the Retirement Plan paid $127 per participant in recordkeeping fees. (Id. at 20). In addition, BMO Harris received indirect compensation through revenue sharing, but the amount and/or formula for determining the revenue sharing was not publically disclosed. (Id.).

The 403(b) Plan was established and became effective on January 1, 2009. (Id. at 8). Essentia has always been identified as the 403(b) Plan sponsor. (Id. at 8). Lincoln National Corporation ("Lincoln") was the recordkeeper for the 403(b) Plan, which at the end of its 2009 plan year had 2,731 participants. (Id. at 19). The number of participants in the 403(b) Plan stayed roughly the same through the end of 2011. (Id.). For this time period, the compensation agreement between the 403(b) Plan and Lincoln for recordkeeping was based solely on Lincoln's receipt of revenue sharing from the 403(b) Plan's investments; the amount or formula used for revenue sharing was not publically disclosed. (Id. at 20).

In the 2010 plan year, BMO Harris received $142 per participant in addition to the revenue sharing. (Id. at 21). The payments to Lincoln for the 403(b) Plan in 2010 are unknown.

(Id.). Reasonable alternate recordkeeping services were then available for plans the same size as the Plans for $60-$80 per participant, and the fees were "trending downward." (Id.).

By December 31, 2011, the Retirement Plan was paying BMO Harris $146 per participant. (Id.).

Effective January 1, 2012, the Retirement Plan and the 403(b) Plan were administratively combined; Essentia became the sponsor for both of the Plans, and SMDC was no longer the sponsor for the Retirement Plan. (Id. at 1, 4, 7-8, 22). The Plans' governing documents now identify Essentia as the fiduciary of the Plans responsible for their overall administration. (Id. at 4). Essentia is also the sponsor, the administrator, a named fiduciary, and a functional fiduciary under the relevant statutory provisions of ERISA. (Id. at 4-5). Although Davidson is no longer identified by the Retirement Plan as the plan administrator, Plaintiffs allege that Davidson has continued to "serve[] functionally as the individual administrator of both Plans, with the authority to carry out the duties assigned to Essentia by the Plans' governing documents." (Id. at 6). Davidson has continued to maintain her authority to hire and monitor service providers for the Plans. (Id.). Davidson is a named fiduciary of the Plans as defined by ERISA's statutory provisions. (Id. at 7).

Essentia, through its Board of Directors, appointed employees of Essentia to the Essentia Health Investment Committee ("Investment Committee"), which is responsible for oversight of the Plans, including the expenses of administering the Plans. (Id. at 4-5). The Investment Committee reports to Essentia's Board of Directors and is a fiduciary of the Plans per ERISA. (Id. at 5).

With regard to the recordkeeping services, the Plans changed recordkeepers in 2012, both switching to Diversified Retirement Corporation ("Diversified"). (Id. at 22). The Plans began to

offer a single investment lineup, and participants with balances in both Plans began receiving a single statement. (Id.). By the end of 2012, the Retirement Plan had over 14,000 participants and the 403(b) Plan had approximately 3,200 participants. (Id.).

In their 404a-5 disclosures, Defendants and Diversified consistently represented to participants in the Plans that the base recordkeeping fee was between $52 and $53 per participant plus additional fees collected directly from the participants' investments. (Id. at 22-23). In 2012, from the combined Plans, Diversified collected $65 per participant in fees. (Id. at 23). For a plan the size of the combined Plans at the time, however, comparable services were then available from other recordkeeping service providers for $45 to $55 per participant. (Id.).

For the 2013 plan year, Diversified merged with Transamerica Retirement Solutions ("Transamerica") and was rebranded as Transamerica. (Id. at 24). That year, Transamerica collected $89 per participant in compensation. (Id.).

At the end of 2014, the Retirement Plan had 16,468 participants with balances and it held approximately $982 million in assets; the 403(b) Plan had 2,836 participants with balances and it held approximately $103 million in assets. (Id. at 9). Transamerica collected $94 per participant in 2014 and $88 per participant in 2015. (Id. at 24-25). Between 2014 and 2016, comparable recordkeeping services for a plan the size of the combined Plans were available for between $35 and $45 per participant. (Id. at 24). Transamerica continues to serve as the Plans' recordkeeper. (Id. at 25).

## II.    PROCEDURAL HISTORY

On December 29, 2016, Plaintiffs Mark Morin, Janet Hufnagel, Diane Mesedahl, Shannon Lushine, Amy Palo, Tim Robinson, and Jeanette Terhaar ("Plaintiffs"), all of whom are or were participants in one or both of the Plans, initiated the present action by filing their

Complaint in this Court. (Id., at 2-4; see, also, [Docket No. 1]). They brought suit (on behalf of themselves and as representatives of a putative class of others similarly situated) against Defendants Essentia; SMDC; Davidson; the Investment Committee; John Does 1-15, who are the as-yet unidentified members of the Investment Committee; and John Does 16-30, who are the as-yet unidentified "committees, entities, and individuals" to whom the other Defendants delegated their fiduciary responsibilities with respect to the Plans. (Id. at 1-7). Because the December 2016, Complaint is no longer the operative Complaint, the claims therein are not detailed here.

On March 3, 2017, Defendants filed their initial Motion to Dismiss, [Docket No. 11].[2]

On March 24, 2017, Plaintiffs filed their First Amended Complaint, [Docket No. 17], bringing claims against the same Defendants, based upon what Plaintiffs deem excessive recordkeeping fees. In Count I, Plaintiffs allege that Defendants Essentia, the Investment Committee, Davidson, and John Does 1-30 breached their fiduciary duties of prudence and loyalty to the Plans by failing to prudently investigate and select a reasonable recordkeeping arrangement, and in doing so, they cost the Plans' participants "millions of dollars in excessive recordkeeping fees." (FAC, [Docket No. 17], 29-31). In Count II, Plaintiffs allege that Essentia and SMDC, as fiduciaries of the Plans, breached their fiduciary duties to monitor the individuals or committees to which fiduciary duties were further delegated. (Id. at 32-33). Specifically, Plaintiffs allege a monitoring failure with regards to the performance of Davidson and the Investment Committee; the processes by which the Plans' recordkeeping arrangements were investigated, approved, and monitored; and failure to remove inadequately performing fiduciaries, thereby allowing further loss. (Id. at 33). Plaintiffs seek class certification; declaratory judgment that Defendants breached their fiduciary duties; actual monetary damages;

_____

[2] On March 29, 2017, Judge Kyle issued an Order denying the initial Motion to Dismiss as moot based upon Plaintiffs filing their First Amended Complaint. (Order, [Docket No. 18]).

an accounting; surcharges; equitable restitution; permanent removal of Defendants from fiduciary positions of the Plans; injunctive relief; appointment of an independent administrator for the Plans for a set time period, who will require competitive bidding for recordkeeping services for the Plans; creation of a constructive trust for disgorged funds; and attorney's fees, costs, and interest. (Id. at 34-35).

On April 28, 2017, Defendants filed their Motion to Dismiss the First Amended Complaint, [Docket No. 21], which is now before this Court. Plaintiffs filed their Memorandum in Opposition, [Docket No. 32], on June 12, 2017, and on July 3, 2017, Defendants filed their Reply Memorandum, [Docket No. 39].

This Court held a Motion Hearing on July 25, 2017, and Defendants' Motion to Dismiss was taken under advisement thereafter. (See, Minute Entry, [Docket No. 40]).

## III.  DEFENDANTS' MOTION TO DISMISS, [Docket No. 21]

### A.  Standards of Review

When considering a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998) (citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998)), cert. denied 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556-57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678-81.

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended:

[A] fiduciary shall discharge his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries and—
    (A) for the exclusive purpose of:
    (i) providing benefits to participants and their beneficiaries; and
    (ii) defraying reasonable expenses of administering the plan;
    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. § 1104(a)(1). In other words,

ERISA imposes the duties of loyalty and prudence on fiduciaries. The duty of loyalty requires fiduciaries to act "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." The duty of prudence requires fiduciaries to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing." The duty "'focuses on the fiduciary's conduct preceding the challenged decision.'" When determining whether a fiduciary has acted prudently, the court must "focus on the process by which it makes its decisions rather than the results of those decisions." The key question is whether a "fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment."
In order to state a claim for breach of fiduciary duty, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan.

(Citations omitted.) <u>Wildman v. American Century Servs., LLC</u>, ___ F. Supp. 3d ___, 2017 WL 839795, *5-6 (W.D. Mo. Feb. 27, 2017). Under certain circumstances, "failing to monitor and control recordkeeping fees and . . . paying excessive revenue sharing from Plan assets" can constitute a breach of the fiduciary duties of loyalty and prudence required by ERISA. <u>See</u>, <u>Tussey v. ABB, Inc.</u>, 746 F.3d 327, 336-37 (8th Cir. 2014).

### B. Analysis

Defendants argue that Plaintiffs have failed to plausibly allege a breach of fiduciary duties. (Mem. in Supp., [Docket No. 23], 1). More specifically, Defendants contend that Plaintiffs' claims of breach rest solely on allegations that the Plans paid more in recordkeeping fees than what was available to a single plan of similar size, and Defendants contend that this argument compares "apples to oranges," contains fatally flawed reasoning, and is contradicted by the documents relied upon in the First Amended Complaint. (<u>Id.</u> at 1-2).

### 1. Submitted Exhibits

First, the Court must decide whether to consider the extensive exhibits submitted by the parties in conjunction with their briefing on this Motion. When considering a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint." <u>Riley</u>, 153 F.3d at 629. In order to consider matters outside the pleadings, the Court must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56. <u>See</u>, Fed. R. Civ. P. 12(d). However, "'documents necessarily embraced by the complaint are not matters outside the pleading.'" <u>Zean v. Fairview Health Servs.</u>, 858 F.3d 520, 526 (D. Minn. 2017) (quoting <u>Enervations, Inc. v. Minn. Mining & Mfg. Co.</u>, 380 F.3d 1066, 1069 (8th Cir. 2004)). In addition, the court "may consider some materials that are part of the public record or do not

contradict the complaint" without converting the motion to one under Rule 56. See, Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 (8th Cir. 2012).

In the present case, Defendants' Motion explicitly requests dismissal pursuant to Rule 12(b)(6), ([Docket No. 21], 1), and Defendants submitted to the Court 639 pages of attachments to their Memorandum in Support of the Motion to Dismiss. (See, [Docket Nos. 24-1 through 25-20]). Defendants' Exhibits A through J, [Docket Nos. 24-1 through 24-10], are excerpts from annual fee disclosures sent to participants of the 401(k) Plan and 403(b) Plan now at issue in the present case. (Carlin Dec., [Docket No. 24], 1-3). These fee disclosures are specifically referred to by Plaintiffs in the First Amended Complaint. (FAC, [Docket No. 17], 22-23). Defendants' Exhibits 1 through 20, [Docket Nos. 25-1 through 25-20], are copies of excerpts from Form 5500s and amended Form 5500s from the Plans at issue in the present case; these forms are publicly available online from the United States Department of Labor Employee Benefits Security Administration. (Loehrke Dec., [Docket No. 25], 1-3). Not only do Plaintiffs not take issue with these submissions, Plaintiffs have submitted their own additional 454 pages' worth of the attachments to the Form 5500s, also available online from the United States Department of Labor Employee Benefits Security Administration. (Engstrom Dec., [Docket Nos. 33 through 33-22]). Because all of these additional documents are either clearly embraced by the First Amended Complaint and/or available public records, the Court could, if it chose to, consider them without converting the present Motion to Dismiss under Rule 12(b)(6) into one for summary judgment under Rule 56.

However, the documents Defendants submitted in Exhibits A-J, [Docket Nos. 24-1 through 24-10], are submitted explicitly to refute factual allegations made in the First Amended Complaint. (Mem. in Supp., [Docket No. 23], 19-20). To encourage this Court to consider their

Exhibits and make factual findings in the context of the Motion presently before this Court, Defendants cite <u>Chicago Dist. Council of Carpenters Welfare Fund v. Caremark</u>, 474 F.3d 463, 473-75 (7th Cir. 2007), in which the Seventh Circuit in reviewing a ruling on a motion to dismiss, considered contracts which had been attached to the complaint, and the Seventh Circuit stated: "To the extent that the contracts contradict the Complaint, the contracts trump the facts of allegations presented in the Complaint." (Mem. in Supp., [Docket No. 23], 19).

However, <u>Chicago Dist. Council of Carpenters Welfare Fund</u>, in addition to not being binding on this Court, is easily distinguishable. In that case, the contracts were attached to the complaint itself; here, Defendants are attempting to submit additional documents outside of the First Amended Complaint to rebut and undermine factual allegations made in the First Amended Complaint. Defendants provide no case law from within the Eighth Circuit which allows them to do so despite the well-established standards set forth above confining Rule 12(b)(6) analysis to facts alleged within the four corners of the complaint (or which do <u>not</u> contradict the complaint), which must be taken as true.

In light of this well-established standard, this Court declines to consider the extra Exhibits submitted by both parties in conjunction with the present Rule 12(b)(6) Motion to Dismiss. <u>See</u>, <u>TMT Mgmt. Grp., LLC v. U.S. Bank Nat'l Ass'n.</u>, No. 14-cv-4692 (MJD/JSM), 2016 WL 730254, *13 (D. Minn. Jan. 4, 2016) (declining to consider, in the context of Rule 12(b)(6) motion, exhibits submitted by defendant to show a factual allegation within the complaint was "'patently false'" and declining to consider an affidavit thereafter submitted by plaintiff to refute the exhibits).

2. **Statute of Repose**

Defendants contend that "[a]ny claim based upon conduct prior to Transamerica's 2012 engagement is barred by ERISA's six-year statute of repose." (Mem. in Supp., [Docket No. 23], 15-16).

> 29 U.S.C. 1113 provides:
>
> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
>
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Plaintiffs concede that they may not seek to recover fees imposed before December 29, 2010. (Mem. in Opp., [Docket No. 23], 28). Plaintiffs state that they do not intend to do so and that the proposed class definition in the First Amended Complaint which referred to the recovery period as beginning "December 21, 2010" was a typographical error and should have read "December 29, 2010," a date 6 years prior to the date the original Complaint was filed in this Court. (Id. at 23, n.21; [Docket No. 1]).

Nevertheless, Defendants continue to contend that the statute of repose bars all "claims prior to Transamerica's January 1, 2012, engagement." (Reply Mem., [Docket No. 39], 14). Invocation of a statute of repose is an affirmative defense and, as such, Defendants bear the burden of proof. See, Integrity Floorcovering, Inc. v. Broan-Nu Tone LLC, 503 F. Supp. 2d 1136, 1139 (D. Minn. 2007), aff'd at 521 F.3d 914 (8th Cir. 2008).

Defendants claim that because fees imposed between December 29, 2010, and January 1, 2012, were imposed on the terms of contracts that were "plainly executed prior to that date," the "last action which constituted part of the [asserted] breach" took place when those contracts were

executed. (Id. at 15). For their part, Plaintiffs assert that "[i]t is axiomatic that Plaintiffs could not have sued to recover these excess charges until they were imposed." (Mem. in Opp., [Docket No. 32], 24). In support, Plaintiffs cite Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828-29 (2015), in which the United States Supreme Court examined an ERISA fiduciary's "continuing duty . . . to monitor investments and remove imprudent ones." (Id.).

The issue in Tibble was "whether a fiduciary's allegedly imprudent retention of an investment is an 'action' or 'omission' that triggers the running of the 6-year limitations period" or whether the time period begins to run on the date the investment was initially included in the plan. 135 S. Ct. at 1826. Noting "that under trust law a fiduciary is required to conduct a regular review of its investment with the nature and timing of the review contingent on the circumstances," the Tibble Court stated that "[t]his continuing duty exists separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset." Id. at 1827-28. With regards to that continuing duty to monitor, "so long as the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." Id. at 1829. The Supreme Court reversed the Ninth Circuit's holding to the contrary and remanded the plaintiffs' claims that the defendants breached their duties within the 6-year period. Id. at 1829.

Although the case presently before this Court involves a duty to pay reasonable recordkeeping fees and not a duty to evaluate retention of investments, both duties are continuing, and the Tibble Court's reasoning applies here as well. Thus, as long as the alleged breach in the present case—the payment of allegedly unreasonable recordkeeping fees— occurred within 6 years of Plaintiffs filing suit, the claim is timely.

Taking all of the facts in the First Amended Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, as must be done in the context of this Rule 12(b)(6) Motion to

Dismiss, Defendants have not shown that, <u>as a matter of law</u>, the 6-year statute of repose bars claims of a breach of a continuing duty that occurred prior to January 1, 2012.

### 3. **Separation of Duty of Loyalty/Duty of Prudence**

Defendants argue that Plaintiffs have failed to allege a plausible claim that Defendants violated their fiduciary duty of prudence. (Mem. in Supp., [Docket No. 23], 8-22). Defendants also separately argue that Plaintiffs have failed to allege a plausible claim that Defendants violated their fiduciary duty of loyalty, in part asserting that Plaintiffs have failed to allege a breach of the duty of loyalty "separate and distinct from their 'prudence' allegations." (<u>Id.</u> at 23-24). Plaintiffs ask the Court not to conduct a separate analysis on each duty, but to consider them as one. (Mem. in Opp., [Docket No. 32], 21-23).

The parties each cite case law from outside this Circuit which come to opposing conclusions. Defendants direct the Court to <u>White v. Chevron Corp.</u>, No. 16-cv-793-PJH, 2017 WL 2352137 (N.D. Cal. May 31, 2017), <u>appeal docketed</u> June 9, 2017 ("<u>White II</u>").[3] (Reply Mem., [Docket No. 39], 16). In <u>White II</u>, the District Court for the Northern District of California granted a motion to dismiss a first amended complaint, and it treated the duties of loyalty and prudence as separate duties; <u>White II</u> held that plaintiffs had failed to plausibly plead separate facts alleging a breach of the duty of loyalty. 2017 WL 2352137, *4, 6-9. Rather, the <u>White II</u> Court specifically observed that the plaintiffs had alleged "that defendants had breached

---

[3] There are two iterations of <u>White v. Chevron Corp.</u> cited by the parties in the present case. In their Memorandum in Support of the Motion, Defendants cite to <u>White v. Chevron Corp.</u>, No. 16-cv-793-PJH, 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ("<u>White I</u>"), to support other arguments. In <u>White I</u>, the District Court for the Northern District of California granted the defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6), but did so with leave for the plaintiffs to amend their complaint by September 30, 2016. 2016 WL 4502808, at *19. Plaintiffs did so, and <u>White II</u>, was the district court's consideration of the defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6). <u>White II</u> is cited by Defendants in the present case in their Reply Memorandum.

their fiduciary duties of 'loyalty and prudence,'" pleading them as a pair, and failing to "distinguish between 'prudence' and 'loyalty.'" Id. at *6.[4]

Defendants also cite Romero v. Nokia, Inc., No. C 12-6260 PJH, 2013 WL 5692324, *5 (N.D. Cal. Oct. 15, 2013), in which the District Court for the Northern District of California first found that the plaintiff had not alleged sufficient facts with respect to the breach of the duty of prudence claim to survive the motion to dismiss, and then noted:

> Plaintiff also asserts a claim for breach of the duty of loyalty, but defendants argue that this theory "hinges entirely" on the prudence-based allegations, and plaintiff does not challenge that argument, nor does he present any separate allegations regarding any loyalty breach. Thus, the court also GRANTS defendants' motion to dismiss plaintiff's claim for breach of the duty of loyalty, and DISMISSES plaintiff's first cause of action in its entirety.

2013 WL 5692324, at *5. Defendants argue that the same view should apply here, and that even if the Plaintiffs have plausibly pled a prudence claim, they have made no allegations regarding a distinct loyalty claim which ought to be considered separately. (Mem. in Supp., [Docket No. 23], 25).

In response, Plaintiffs emphasize the Fifth Circuit's recognition that 29 U.S.C. § 1104 "imposes several overlapping duties" when it establishes the duties of an ERISA fiduciary. (Mem. in Opp., [Docket No. 32], 21 (quoting Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 294 (5th Cir. 2000)). Plaintiffs maintain that the current situation is less akin to Romero, and more

---

[4] Defendants also point the Court to Loomis v. Exelon Corp., 658 F.3d 667, 671 (7th Cir. 2011), implying that Loomis held that in order to plead a breach of the duty of loyalty, a plaintiff must allege that the defendants "took action to 'enrich [themselves] at participants' expense." (Reply Mem., [Docket No. 39], 15-16 (quoting Loomis, 658 F.3d at 671). In fact, Loomis held nothing of the sort. In explaining why Jones v. Harris Assocs., 559 U.S. 335 (2010), did not lessen the precedential impact of Hecker v. Deere & Co., 556 F.3d 575 (7th Cir. 2009), the Loomis Court simply noted that Jones "dealt with the fiduciary duties of investment advisors" when "seeking management fees from mutual funds under their effective control," while the "[p]laintiffs [in Loomis] do not contend that the funds that [the defendant in Loomis] selected had any control over it, or over them; there is no reason to think that [the defendant] chose those funds to enrich itself at participants' expense." Loomis, 658 F.3d at 670-71.

akin to <u>Terraza v. Safeway</u>, ___ F. Supp. 3d ___, 2017 WL 952896 (N. D. Cal. 2017). (Mem. in Opp., [Docket No. 32], 22). The <u>Terraza</u> Court distinguished the situation before it from that which had arisen in <u>Romero</u>, noting that the <u>Terraza</u> plaintiff had "allege[d] that 'Defendants tasked the trustee . . . with confirming the value of its own Common Trusts, an obviously profound conflict-of-interest which is especially dangerous, as these Common Trusts are unregistered and not publicly traded," and she also alleged that "'[c]ertain Plan investments are managed or significantly influenced by'" the trustee. 2017 WL 952896, at *7. The <u>Terraza</u> plaintiff alleged that such a "relationship inappropriately affected and compromised the Plan's investment options." <u>Id.</u> The <u>Terraza</u> Court concluded that such allegations were sufficient to survive the Rule 12(b)(6) motion to dismiss. <u>Id.</u>

Attempting to analogize to <u>Terazza</u>, Plaintiffs in the present case assert that "Essentia granted Transamerica the same discretion, allowing the recordkeeper to charge participants excess fees for its own benefit, [so] the same result should apply here." (Mem. in Opp., [Docket No. 32], 23).

It does not appear that the Eighth Circuit or any Court in this District has addressed this precise point. However, as recently as 2014, the Eighth Circuit quoted its own earlier language and described the "twin duties of loyalty and prudence," and it collectively described the requirements of these twin duties to be:

> [T]o act "solely in the interest of [plan] participants and beneficiaries" and to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

<u>Tussen</u>, 746 F.3d at 335 (quoting <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 595 (8th Cir. 2009)). This language from the Eighth Circuit tends to support Plaintiffs' position that the duties

of loyalty and prudence are intertwined and need not be pled separately in a Complaint in order to survive a Rule 12(b)(6) Motion to Dismiss.

Even more compelling is the Eighth Circuit's analysis in <u>Braden</u> of the plaintiff's "claim for breach of fiduciary duty." Rather than engage in separate analysis of discrete claims for breach of the duty of loyalty and breach of the duty of prudence, the Eighth Circuit considered them jointly, in later portions of its opinion it likewise described "the general duty of loyalty under 29 U.S.C. § 1104(a)(1)." <u>Braden</u>, 588 F.3d at 595-98. This history of collective analysis and lack of prior demand that breaches of the duties of loyalty and prudence must be pled separately supports the conclusion here that the duties of loyalty and prudence may be considered together. <u>See</u>, <u>e.g.</u>, <u>Wildman</u>, 2017 WL 839795, at *4 ("Plaintiffs have plausibly stated a claim for breach of the duty of loyalty and prudence").

Therefore, the Court declines to parse the duties of loyalty and prudence and instead addresses them, as the Eighth Circuit did in <u>Braden</u>, as twin overlapping fiduciary duties.

### 4. **Failure to Sufficiently Allege a Claim**

"In order to state a claim for breach of fiduciary duty, a plaintiff must make a prima facie showing that the defendant acted as a fiduciary, breached its fiduciary duties, and thereby caused a loss to the Plan." <u>Wildman</u>, 2017 WL 839795, at *5-6 (citing <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225-26 (2000). Defendants now challenge <u>only</u> the sufficiency of the allegations as related to the element of breach.

An ERISA fiduciary owes plan participants the duties of prudence and loyalty, which require that fiduciary:

> to act "solely in the interest of [plan] participants and beneficiaries" and to carry out their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

<u>Tussen</u>, 746 F.3d at 335. The "'prudent person standard is an objective standard . . . that focuses on the fiduciary's conduct preceding the challenged decision.' In evaluating whether a fiduciary has acted prudently, a court must focus on the process by which fiduciaries make their decisions rather than the results of those decisions." (Citations omitted.) <u>Christopher v. Hanson</u>, No. 9-cv-3703 (JNE/JJK), 2011 WL 2183286, *6 (D. Minn. June 6, 2011).

In the First Amended Complaint, Plaintiffs detail the recordkeeping fees paid (upon information and belief to the best of Plaintiffs' knowledge at this point), and they assert that there were lesser fee structures available for comparable services:

> [b]ased upon the excessive fees paid to BMO Harris and Lincoln Financial, the failure to take advantage of the combined bargaining power of the 403(b) Plan and the Retirement Plan, and the failure to disclose to participants the compensation being paid to either BMO Harris and Lincoln Financial, one can reasonably infer that the Plan's processes for selecting and managing each plan's recordkeeper were tainted by failure of effort, competence, and/or loyalty. <u>See Braden</u>[, 588 F.3d at 597-98].

(FAC, [Docket No. 17], 22).

Defendants argue that because the First Amended Complaint "alleges nothing concrete about the <u>process</u> the Plans' fiduciaries used to select recordkeepers and negotiate fees with them," and because Plaintiffs concede that they lack "'actual knowledge'" of the process used, Plaintiffs' allegations of a breach of fiduciary duty are inadequate to survive the present Motion to Dismiss. (Emphasis added.) (Mem. in Supp., [Docket No. 23], 8-9). Defendants argue that the Court cannot make the inference requested by Plaintiffs because the fee comparison Plaintiffs propose (1) fails to take into account that the Plans required administration of two separate plans, not one; (2) failed to take into account additional services provided by Transamerica; (3) makes the incorrect factual assertion that Transamerica had unchecked discretion to award itself extra

revenue-sharing; and (4) are based on misinterpretations of inaccurate and outdated materials. (Id. at 9-22). Moreover, Defendants contend that a complaint cannot establish a plausible inference of imprudence based solely on cost comparison. (Id. at 10-11).

First, with respect to Defendants' argument that the First Amended Complaint must be dismissed because Plaintiffs have failed therein to directly allege facts about Defendants' process for selection of recordkeepers, retention of recordkeepers, or negotiation with recordkeepers, all of the cases Defendants cite in support of their position are from outside the District of Minnesota and outside the Eighth Circuit. (See, Mem. in Supp., [Docket No. 23], 8-9 (citing Bd. of Trs. of S. Cal. IBEW-NECA Defined Contribution Plan v. Bank of New York Mellon Corp., No. 09 Civ. 6273 (RMB)(AJP), 2010 WL 1558587 (S.D. N.Y. Apr. 14, 2010), vacated on other grounds by 2010 WL 3958790 (Sept. 7, 2010), and Bd. of Trs. of Operating Eng'rs Pension Tr. v. JPMorgan Chase Bank, Nat'l Ass'n, 09 Civ. 9333 (BSJ)(DCF), 2012 WL 1382274, * (S.D. N.Y. Apr. 20, 2012)).

Looking to other jurisdictions is unnecessary because the Eighth Circuit has already considered this very argument, and it was rejected:

> [t]he first of [the district court's] errors stems from the mistaken assumption that [plaintiff] was required to describe directly the ways in which [defendants] breached their fiduciary duties. Thus, for example, the district court faulted the complaint for making "no allegations regarding the fiduciaries' conduct." Rule 8 does not, however, require a plaintiff to plead "specific facts" explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled "'give the defendant fair notice of what the claim is and the grounds upon which it rests,'" and "allow[] the court to draw the reasonably inference" that the plaintiff is entitled to relief.
> . . . .
> The district court correctly noted that none of [the] allegations [in the complaint] directly addresses the process by which the Plan was managed. It is reasonable, however, to infer from what is alleged that the process was flawed.

Braden, 588 F.3d at 595-96 (emphasis added).[5]

To the extent that Defendants ask the Court to find that the facts Plaintiffs have alleged in the First Amended Complaint cannot lead to a reasonable inference that Defendants breached their fiduciary duties, Defendants' arguments largely seek to attack the merits of the Plaintiffs' allegations and assert alternate constructions of inferences to be drawn from the facts which result in Defendants' favor. For example, Defendants point out to the Court that if the facts in the First Amended Complaint are construed in a certain way, they "suggest that the Employee Defendants were, in fact, prudently managing the Plans' administrative fees." (Mem. in Supp., [Docket No. 23], 18; see, also, July 25, 2017, Motion Hearing, Digital Record, 10:12-15). But when deciding a Rule 12(b)(6) Motion to Dismiss, "inferences are to be drawn in favor of the non-moving party." See, Braden, 588 F. 3d at 595. The circumstance that a plausible inference in Defendants' favor might be drawn from the facts in the First Amended Complaint is not sufficient reason for Defendants to succeed on their present Rule 12(b)(6) Motion to Dismiss. See, e.g., Id. at 595 ("[T]here may well be lawful reasons [defendants] chose the challenged investment options. It is not [plaintiff's] responsibility to rebut these possibilities in his complaint, however.").

This leaves Defendants' "apples to oranges" argument, in which Defendants allege that all of the comparisons by which Plaintiffs show in the First Amended Complaint that the Plans' fees to Transamerica were higher than the market average are improper, as Plaintiffs compare the fees for services provided to two discrete Plans—one a 401(k) plan and one a 403(b) plan—to the fees for services provided for a single plan with roughly the same assets and number of

---

[5] At the July 25, 2017, Motion Hearing, Defendants also alleged that Braden supports their position that there must be direct allegations and direct evidence for an ERISA fiduciary duty claim to survive a Rule 12(b)(6) motion to dismiss. (Digital Record, 10:10-15). However, the language quoted above directly contradicts Defendants' position on this point. Under Braden, it is clear that the failure to directly allege and describe the allegedly flawed process of the fiduciaries is not fatal to Plaintiff's claims in the present context of a Rule 12(b)(6) Motion to Dismiss.

participants as the two Plans here have combined. (Mem. in Supp., [Docket No. 23], 12-15; July 25, 2017, Motion Hearing, Digital Record, 10:16-20).

Defendants argue that Plaintiffs do not allege that the lower fees they use for comparison to the Plans' fees were from recordkeepers providing the same services the Plans received from their recordkeepers. However, Plaintiffs respond that all of their comparison plans are "all-in" fees, similar to the Plans' service fees. (Mem. in Opp., [Docket No. 32], 16-17). In addition, the Court notes that the First Amended Complaint not only characterizes the comparison fees as "all-in" fees, the First Amended Complaint also alleges that the comparison fees would provide for "comparable or superior" services. (Id. at 16-17; FAC, [Docket No. 19], 19, 23-24). These allegations distinguish the case presently before the Court from those in which other courts within this District have granted Rule 12(b)(6) motions to dismiss, such as Meiners v. Wells Fargo & Co., No. 16-cv-3981 (DSD/FLN), 2017 WL 2303968 (D. Minn. May 25, 2017), appeal filed June 23, 2017. Defendants assert that Meiners strongly supports their request for dismissal, but Meiners is materially and factually distinguishable from the case presently before the Court.

In Meiners, the plaintiffs asserted a breach of fiduciary duty based upon high fund fees. Id. at *3. However, the Court noted that the complaint therein did not allege that the fees were unreasonably high; the complaint merely noted that cheaper funds were available. Id. at *3 n.3. Moreover, "nothing in the complaint suggest[ed] that [the cheaper funds] are reliable comparators, offer similar services, or are of a similar size, nor does it contain facts showing that the [chosen] funds are more expensive when compared to the market as a whole." Id. at *3. Thus, the Meiners Court found that plaintiffs had failed to plead a plausible breach of fiduciary duty based upon the high fund fees. Id. Here, however, Plaintiffs specifically allege that the

lower-cost recordkeeping services are of a similar size and offer either comparable or superior services than those offered by the recordkeepers chosen by the Defendants.

The present case is more similar to <u>Wildman v. American Century Servs., LLC</u>, 237 F. Supp. 3d 902 (W.D. Mo. 2017).[6] In that case, which similarly arose upon a Rule 12(b)(6) motion to dismiss, one of the plaintiffs' claims was for excessive recordkeeping fees in relation to a defined contribution, 401k retirement plain. <u>Id.</u> at 907-08, 912. The <u>Wildman</u> court explicitly found that Plaintiffs had sufficiently pled a plausible claim for breach of fiduciary duty based upon excessive recordkeeping costs where Plaintiffs had (1) "alleg[ed] the amounts paid to the recordkeeper and reasonable recordkeeping fees" and (2) pled "facts that State Defendants failed to seek alternative recordkeeping providers." <u>Id.</u> at 915.

When the First Amended Complaint before this Court is taken as a whole, all facts pled therein are taken as true, and all reasonable inferences drawn in Plaintiffs' favor, this Court believes that Plaintiffs have pled sufficient facts to allege a plausible claim of breach of fiduciary duty and to give Defendants fair notice of the grounds for such claim. <u>See</u>, <u>Braden</u>, 588 F.3d at 595. The First Amended Complaint alleges that the Plans have a large pool of assets and a high number of participants, that the recordkeeping market is highly competitive, and that despite this competitive market, the fiduciary Defendants have paid higher than reasonable market fees for service packages provided by the Plans' recordkeepers. Further, Plaintiffs allege that comparable or superior recordkeeping services were available at lower cost. It is possible to reasonably infer

---

[6] At the July 25, 2017, Motion Hearing, Defendants argued that <u>Wildman</u> (and other cases) is materially distinguishable from the case presently before the Court because <u>Wildman</u> included additional claims of self-dealing, investment in unnecessarily expensive mutual funds, and other "more serious" allegations. (Digital Record, 10:25-32). In order for an ERISA fiduciary duty case to survive, however—especially in the present context of a Rule 12(b)(6) motion to dismiss—the number of claims is not dispositive. Put another way, the number of claims or the subjective gravity of the allegations of other claims pled in the complaint are not germane to the issue presently before this Court: whether a claim of breach of fiduciary duty based on allegedly excessive recordkeeping fees is plausible as pled in the complaint.

from what is alleged that Defendants' process for selecting a recordkeeper, review and retention of recordkeepers, and/or for negotiating fees with recordkeepers was therefore flawed.

Accordingly, the First Amended Complaint sufficiently states a claim for breach of the fiduciary duties of prudence and loyalty.

### 5. **Duty to Monitor**

Finally, Defendants allege that Plaintiffs have failed to allege a plausible claim that Essentia and SMDC violated their duty to monitor. (Mem. in Supp., [Docket No. 23], 24). Defendants first argue that this derivative claim fails because Plaintiffs' direct claim of breach of fiduciary duty must fail. (Id. at 24). For the reasons stated above, this Court rejects that underlying premise, so necessarily it rejects this argument as well.

In the alternative, Defendants argue that Plaintiffs have failed to allege facts which plausibly suggest that Essentia and SMDC failed to "'review the performance of its appointees at reasonable intervals in such a manner as may be reasonably expected to ensure compliance with the terms of the plan and statutory standards.'" (Id. (quoting In re Calpine Corp. ERISA Litig., No. C-03-1685 SBA, 2005 WL 1431506, *6 (N.D. Cal. Mar. 31, 2005))). Recently, Judge Susan Richard Nelson stated:

> "ERISA opinions and the position of the Department of Labor make clear that the power to appoint and remove plan fiduciaries implies the duty to monitor appointees 'to ensure that their performance is in compliance with the terms of the plan and statutory standards.'" However, the duty to monitor is also quite narrow and "does not include a duty 'to review all business decisions of Plan administrators' because 'that standard would defeat the purpose of having [fiduciaries] appointed to run a benefits plan in the first place.'"

(Citations omitted). Krueger v. Ameriprise Fin., Inc., No. 11-cv-2781 (SRN/JSM), 2014 WL 1117018, *9 (D. Minn. Mar. 20, 2014) ("Krueger II"). However, "'courts have been unwilling to delineate and probe the scope of defendants' monitoring duties on [Rule 12(b)(6)] motions to

dismiss, and have permitted such claims to proceed forward to discovery.'" (Citations omitted.) Krueger v. Ameriprise Fin., Inc., No. 11-cv-2781 (SRN/JSM), 2012 WL 5873825, * 19 (D. Minn. Nov. 20, 2012) ("Krueger I").

When the First Amended Complaint is taken as a whole, all facts pled therein are taken as true, and all reasonable inferences drawn in Plaintiffs' favor, Plaintiffs have pled sufficient facts to allege a plausible claim of breach of fiduciary duty to monitor, and to give Defendants fair notice of the grounds for such claim. See, Braden, 588 F.3d at 595. The First Amended Complaint clearly alleges that Essentia and SMDC (for the time relevant to it) were responsible for appointing and removing fiduciaries for the Plans. (FAC, [Docket No. 17], 4-7). It also clearly alleges that Essentia and SMDC failed to monitor its appointees to ensure that they were satisfying their fiduciary duties, as seen in the allegedly unreasonable recordkeeping fees incurred and paid. (Id. at 33-34). It is possible to reasonably infer from what is alleged that Defendants breached their fiduciary duty to monitor so as to put Defendants on fair notice.

Accordingly, the First Amended Complaint sufficiently states a claim for breach of the fiduciary duty to monitor.

## IV. CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

    **1.** Defendants' Motion to Dismiss, [Docket No. 21], be **DENIED.**


Dated: September 13, 2017                           ___s/ Leo I. Brisbois___
                                                  The Honorable Leo I. Brisbois
                                                  United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).